**UNITED STATES of America,**

v.

**Lavin MATTHEWS AKA "L" Christopher McMillian AKA Lloyd Tebiah Shelah Tucker AKA Buddha Defendants.**

**No. 00–CR–269.**

United States District Court,
N.D. New York.

Dec. 31, 2002.

Office of the United States Attorney, Binghamton, NY (Miroslav Lovric, AUSA, of counsel), for the United States.

Castillo & Associates, Albany, NY (Gaspar M. Castillo, Jr., of counsel), for Defendant Lavin Matthews.

Kindlon Shanks Law Firm, Albany, NY (Terence L. Kindlon, of counsel), for Defendant Christopher McMillian.

Office of Peter P. Charnetsky, Vestal, NY (Peter P. Charnetsky, of counsel), for Defendant Tebiah Tucker.

Office of Carl J. Herman, Livingston, NY (Carl J. Herman, of counsel), for Defendant Tebiah Tucker.

### MEMORANDUM DECISION & ORDER

McAVOY, District Judge.

Defendants were indicted on various charges relating to the distribution of crack cocaine, the murder of Carlton Rose in connection with drug trafficking, partic-

ipation in a racketeering influenced and corrupt organization, and the unlawful possession and use of firearms. Presently before the Court are Defendants' motion to (a) declare the death penalty provisions of 21 U.S.C. § 848 and 18 U.S.C. § 3591 (collectively the "Death Penalty Statutes") unconstitutional, (b) strike the notice of special findings from the Indictment; and (c) dismiss the aggravating factors alleged in this case.

## I. BACKGROUND

Defendants were indicted on a Superseding Indictment (the "Indictment") filed on September 25, 2002. The Indictment alleges that all Defendants committed the following violations of law: (1) conspired to possess with the intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. §§ 841 and 846 (Count One); (2) murder while engaging in a narcotics conspiracy in violation of 21 U.S.C. § 848 (Count Two); (3) participation in a racketeering conspiracy in violation of 18 U.S.C § 1962(d) (Count Three); (4) the commission of a violent crime (the murder of Carlton Rose) in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(1) (Count Four); and (5) the felony murder of Carlton Rose during the commission of a robbery also in violation of 18 U.S.C. § 1959(a)(1) (Count Five). The Indictment further alleges that: (6) Defendant Matthews distributed five or more grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count Six); (7) Defendant Matthews carried and used firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Seven); (8) Defendant Matthews possessed firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Eight);

(9) Defendant McMillian carried and used firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Nine); (10) Defendant McMillian possessed firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Ten); (11) Defendant Tucker carried and used firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count Eleven); (12) Defendant Tucker possessed firearms in furtherance of drug trafficking activity in violation of 18 U.S.C. § 924(c)(1) (Count Twelve); (13) Defendant Matthews possessed firearms after having previously been convicted of felony offenses in violation of 18 U.S.C. § 922(g) (Count Thirteen); (14) Defendant McMillian possessed firearms in violation of 18 U.S.C. § 922(g) after having previously been convicted of felony offenses (Count Fourteen); and (15) Defendant Tucker possessed firearms in violation of 18 U.S.C. § 922(g) after having previously been convicted of a felony.

The Indictment further alleges that Defendants are subject to the enhanced penalties of 18 U.S.C. § 521 with respect to Counts One, Two, Three, Four, Five and Six because the offenses alleged in those Counts were committed by participants of a criminal street gang, the Bloods. The Indictment also contains a "Notice of Special Findings" with respect to Counts Two, Four and Five that allege various statutory aggravating factors contained in 21 U.S.C. § 848(n) and 18 U.S.C. § 3591(c) applicable to crimes that carry a possible death sentence.[1]

Defendants now move for a declaration that the death penalty provisions of 21 U.S.C. § 848 and 18 U.S.C. § 3591 are unconstitutional.

---

1. Count Two is subject to the procedures found at 21 U.S.C. § 848. Counts Four and Five are subject to the procedures found at 18 U.S.C. § 3593.

## II. DISCUSSION

### A. Whether the Death Penalty Statutes' Evidentiary Rules Violate the Fifth and Sixth Amendments

Defendants first argue that, in accordance with the decision in *United States v. Fell*, 217 F.Supp.2d 469, (D.Vt.2002), the aggravating factors necessary to sustain a death sentence are functional equivalents of the offense that must be found by a jury beyond a reasonable doubt and that, given the heightened safeguards applicable to death penalty cases, the "relaxed" evidentiary standards contained in the death penalty statutes violate the Fifth Amendment's Due Process Clause and the Sixth Amendment's right of confrontation.

The Death Penalty Statutes (21 U.S.C. § 848 and 18 U.S.C. § 3591, et. seq.) contain virtually identical procedures. First, the government must provide the defendant with notice stating that it intends to seek a death sentence and setting forth the aggravating factors that the government proposes to prove as justifying a death sentence. 21 U.S.C. § 848; *see also* 18 U.S.C. § 3593(a). Next, a jury determines whether the defendant is guilty of the capital offense. *See, e.g., Fell*, 217 F.Supp.2d at 477; *see also* 21 U.S.C. § 848(i); 18 U.S.C. §§ 3591(a); 3593(b). This is often referred to as the "guilt phase" of a death penalty trial. If the defendant is convicted of a death eligible offense, the defendant is entitled to "a separate sentencing hearing to determine the punishment to be imposed." 21 U.S.C. § 848(i); 18 U.S.C. § 3593(b). This separate hearing is referred to as the sentencing or penalty phase.

At the sentencing phase, the jury first considers whether the government has sustained its burden of proving the necessary aggravating factor or factors beyond a reasonable doubt. 21 U.S.C. § 848(k);

18 U.S.C. § 3593(d). Findings with respect to aggravating factors must be unanimous. *Id.* If the jury does not find that the government sustained its burden of demonstrating the necessary aggravating factor(s), the death penalty may not be imposed. 21 U.S.C. § 848(k); 18 U.S.C. § 3593(d). If the jury finds that the government has sustained its burden in this regard, the jury must next "consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors themselves are sufficient to justify a sentence of death." 21 U.S.C. § 848(k); *see also* 18 U.S.C. § 3593(e). Unlike findings concerning aggravating factors, mitigating factors may be found by one or more of the members of the jury by a preponderance of the evidence. 21 U.S.C. §§ 848(j),(k); 18 U.S.C. §§ 3593(c),(d). "Based upon this consideration, the jury by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." 18 U.S.C. § 3593(e); *see also* 21 U.S.C. § 848(k).

The Death Penalty Statutes set forth the evidentiary standards governing the penalty phase. The statutes provide that

> Any . . . information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

21 U.S.C § 848(j); *see also* 18 U.S.C. § 3593(c).[2]

---

**·2.** Section 848 provides that evidence may be     excluded if it is "substantially outweighed" by

It is this provision of the Death Penalty Statutes (*i.e.,* the evidentiary standards for the penalty phase) that Defendants refer to as a "relaxed" evidentiary standard and that they claim violates the Fifth and Sixth Amendments. Defendants argue that because the aggravating factors are the functional equivalent of elements of the offense, the Fifth and Sixth Amendments require that the aggravating factors be found by a jury beyond a reasonable doubt and that the proof regarding such factors be subject to the same guarantees of evidentiary trustworthiness that apply to the guilt phase of the trial (that is, the Federal Rules of Evidence).

Defendants are correct that, in light of *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the statutory aggravating factors "must ... be alleged in the indictment and found by a jury." *United States v. Quinones,* 313 F.3d 49, 53 n. 1 (2d Cir.2002). The Death Penalty Statutes themselves provide that the jury must unanimously find the aggravating factors beyond a reasonable doubt. *See* 21 U.S.C. § 848(j); 18 U.S.C. § 3593(c). Thus, the only question is whether there is some constitutional infirmity with the evidentiary standard applicable to the penalty phase findings.

■ This Court respectfully disagrees with *Fell*'s conclusion that "every element [of every crime set forth in the United States Code] must ... be proven by evidence found to be reliable by application of the Federal Rules of Evidence." *Fell,* 217 F.Supp.2d at 488. The Federal Rules of Evidence are not constitutionally mandated *per se.*[3] *See Dickerson v. United States,* 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("Congress retains

the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution."); *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ("[L]awmakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."); *White v. Illinois,* 502 U.S. 346, 366, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)(Justices Thomas and Scalia concurring) ("Neither the language of the [Confrontation] Clause nor the historical evidence appears to support the notion that the Confrontation Clause was intended to constitutionalize the hearsay rule and its exceptions."); *Duckworth v. Owen,* 452 U.S. 951, 954, 101 S.Ct. 3096, 69 L.Ed.2d 963 (1981) (Justices Rehnquist and Burger dissenting) (Supreme Court precedent "does not establish that the Federal Rules of Evidence are constitutionally mandated."); *Williams v. State of New York,* 337 U.S. 241, 251, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure."); *see also Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002) ("[N]ot all assertions that hearsay rules prohibit will run afoul of the Confrontation Clause."); *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir.1998); Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a *substantial* right of the party is affected.") (emphasis added). "The Supreme Court has cautioned against the wholesale importation of common law and evidentiary rules into the Due Process Clause of Constitution." *United States v. LeMay,* 260 F.3d 1018, 1024–25 (9th Cir.

---

the danger of unfair prejudice, confusing the issues or misleading the jury. Section 3593 omits the term "substantially."

**3.** Indeed, there is no suggestion that criminal trials conducted before the adoption of the Federal Rules of Evidence in 1972 were constitutionally infirm.

2001), *cert. denied*, 534 U.S. 1166, 122 S.Ct. 1181, 152 L.Ed.2d 124 (2002).

▮ Due process only protects matters of "fundamental fairness." *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *see also Montana v. Egelhoff*, 518 U.S. 37, 42–43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir.) (To determine whether the admission of evidence violates due process "we consider whether introduction of this evidence is so extremely unfair that its admission violates fundamental conceptions of justice.") (internal quotations and citation omitted), *reh'g denied*, 157 F.3d 1153 (1998), *cert. denied*, 525 U.S. 1089, 119 S.Ct. 842, 142 L.Ed.2d 697 (1999); *Dunnigan*, 137 F.3d at 125. Without question, due process requires that every element of a crime be proven beyond a reasonable doubt in accordance with the accused's constitutional rights to a fair trial. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 and 477 n. 3, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Lilly v. Virginia*, 527 U.S. 116, 123, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *Estelle v. McGuire*, 502 U.S. 62, 73, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Estelle v. Williams*, 425 U.S. 501, 502, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Bullock v. Carver*, 297 F.3d 1036, 1054 (10th Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 703, 154 L.Ed.2d 640 (2002). While some of these principles of fairness are incorporated into the Federal Rules of Evidence, *see United States v. Tocco*, 135 F.3d 116, 128 (2d Cir.) ("[C]ertain 'firmly rooted' hearsay exceptions ... will inevitably satisfy the Confrontation Clause."), *cert. denied*, 523 U.S. 1096, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998), in many ways the Federal Rules of Evidence go beyond constitutional requirements. Thus, "subject to the requirements of due process, 'Congress has power to prescribe what evidence is to be received in the courts of the United States.'" *United States v. Brainer*, 691 F.2d 691, 695 n. 7 (4th Cir.1982) (quoting *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)); *United States v. Lentz*, 225 F.Supp.2d 672, 682 (E.D.Va.2002). Indeed, rules of evidence must sometimes yield to the constitution's mandate. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."); *see also United States v. Hall*, 165 F.3d 1095, 1113 (7th Cir.) (noting that defendants must be allowed "to put *reliable* third-party confessions before the jury, despite the hearsay rule, when necessary to assist in separating the guilty from the innocent."), *cert. denied*, 527 U.S. 1029, 119 S.Ct. 2381, 144 L.Ed.2d 784 (1999). Likewise, "not all erroneous admissions of ... evidence are errors of constitutional dimension. The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan*, 137 F.3d at 125 (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)); *see also United States v. Hernandez–Guevara*, 162 F.3d 863, 876 n. 3 (5th Cir.1998) ("A breach of the Federal Rules of Evidence does not, in itself, offend the Constitution, rising to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."), *cert. denied*, 526 U.S. 1059, 119 S.Ct. 1375, 143 L.Ed.2d 534 (1999). Thus,

even if Congress entirely abolished the Federal Rules of Evidence, the Due Process Clause, as implemented through the trial court's evidentiary gatekeeping function, would serve to ensure the admission of only that evidence that comports with the right to a fair trial.

■ Addressing the specific concerns raised by Defendants, even if Congress abolished the hearsay rules or the entire Federal Rules of Evidence, the requirements of the Sixth Amendment's Confrontation Clause and the Fifth Amendment's Due Process Clause would fill the void to ensure the accused's right to a fair trial. *See Lilly,* 527 U.S. at 123–24, 119 S.Ct. 1887; *White,* 502 U.S. at 358, 112 S.Ct. 736 (noting that the Confrontation Clause imposes certain requirements "as a predicate for the introduction of out-of-court statements."); *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) ("Regardless of whether the proffered testimony comes within ... [the] hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause."); *Chambers,* 410 U.S. at 294, 93 S.Ct. 1038; *see also Washington v. Schriver,* 255 F.3d 45, 59 (2d Cir.2001) (reviewing evidentiary ruling regarding the preclusion of expert testimony for com-

pliance with constitutional guarantees); *United States v. Chin,* 224 F.3d 121, 124 (2d Cir.2000) (similar); *United States v. Gallego,* 191 F.3d 156, 166–69 (2d Cir.1999) (reviewing admission of hearsay evidence for compliance with Sixth Amendment), *cert. denied,* 528 U.S. 1127, 120 S.Ct. 961, 145 L.Ed.2d 833 (2000); *Hall,* 165 F.3d at 1113; *Felzcerek v. I.N.S.,* 75 F.3d 112, 116 (2d Cir.1996); *Dorsey v. Irvin,* 56 F.3d 425, 426 (2d Cir.1995). As is relevant to the issues raised by Defendants, the Due Process and Confrontation Clauses are satisfied by evidence that carries "sufficient indicia of reliability and trustworthiness." *United States v. Tocco,* 135 F.3d 116, 128 (2d Cir.1998); *see also Lilly,* 527 U.S. at 136, 119 S.Ct. 1887; *White,* 502 U.S. at 356 n. 8, 112 S.Ct. 736; *Maryland v. Craig,* 497 U.S. 836, 846–47, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

Contrary to *Fell*'s conclusion that "Congress has ... [provided] by necessary implication that a defendant does not have a confrontation or cross-examination rights at a capital sentencing proceeding," 217 F.Supp.2d at 489, in altering the evidentiary scheme applicable to the sentencing phase, Congress did not eliminate the constitutional baseline for the admissibility of evidence in a criminal trial.[4] Congress

---

4. Arguably, Congress did quite the opposite and expanded the defendant's ability to introduce evidence demonstrating why he or she should not be subjected to capital punishment. To satisfy Eighth Amendment concerns, Congress conscientiously chose to eliminate many of the strictures imposed upon the admissibility of evidence at the sentencing phase to permit the fact finder to consider "the character and record of the individual offender and the circumstances of the particular offense" before deciding whether to impose a sentence of death. *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *see also United States v. Jones,* 132 F.3d 232, 241–42 (5th Cir.1998) ("Although the Eighth Amendment requires a heightened reliability standard in capital sen-

tencing proceedings, the jury must also receive sufficient information regarding the defendant and the offense in order to make an individual sentencing determination.... [T]he relaxed evidentiary standard does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the constitution."), *aff'd,* 527 U.S. 373, 381, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) ("[I]n order to satisfy the requirement that capital sentencing decisions rest upon an individualized inquiry, a scheme must allow a 'broad inquiry' into all 'constitutionally relevant mitigating evidence.'"); *Lentz,* 225 F.Supp.2d at 683 (citing cases).

The Court recognizes that the prosecution is similarly afforded an expanded ability to

altered the rules of evidence to provide that information is admissible without regard to the Federal Rules of Evidence with the exception that evidence may be excluded if its probative value is outweighed (or, under § 848, substantially outweighed) by the danger of: (1) creating unfair prejudice, (2) confusing the issues, or (3) misleading the jury.[5] *See* 21 U.S.C. § 848(j); 18 U.S.C. § 3593(c). This scheme expressly provides the trial court with the discretion necessary to exclude unreliable and/or prejudicial evidence the admission of which would be fundamentally unfair and, therefore, violate the defendant's right to a fair trial under the Bill of Rights. *See, e.g., United States v. Castillo*, 140 F.3d 874, 883 (10th Cir.1998); *Lentz*, 225 F.Supp.2d at 683–84; *United States v. Waldon*, No. 00–CR–436–J–25 (M.D.Fla. Sept. 30, 2002); *United States v. Frank*, 8 F.Supp.2d 253, 267–69 (S.D.N.Y.1998); *United States v. McVeigh*, 944 F.Supp. 1478, 1487 (D.Colo.1996). By including an equivalent to Fed.R.Evid. 403, Congress ensured that trial judges have the ability to safeguard the accused's constitutional rights, including the right of confrontation. *See Lilly*, 527 U.S. at 124, 119 S.Ct. 1887

("[C]ourts must decide whether the [Confrontation] Clause permits the government to deny the accused his usual right to force the declarant to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth.") (internal quotations and citation omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about ... harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

The instant discussion can be compared to the constitutional attacks on Fed. R.Evid. 414. Federal Rule of Evidence 404(b) generally precludes the admission of evidence of prior crimes. This Rule was somewhat altered in 1994 by the implementation of Rule 414, which permits the admission of evidence of similar crimes in child molestation cases, but leaves Rule 404(b) unaltered with respect to other crimes. *See LeMay*, 260 F.3d at 1024.

---

introduce evidence to establish the aggravating factors supporting imposition of a death sentence. There are, however, numerous procedural safeguards to ensure that such evidence satisfies a constitutionally mandated minimum level of reliability. First, as discussed, the trial judge retains discretion under the statutory evidentiary exceptions to exclude prejudicial evidence. Second, the prosecution has the burden of convincing a *unanimous* jury that it has proven the aggravating factors *beyond a reasonable doubt*. With respect to mitigating factors, on the other hand, the defendant need only satisfy *one* or more jurors by a *preponderance of the evidence*. Thus, when the jury balances the aggravating factors with the mitigating factors, the defendant has the advantage of the proverbial thumb on the scale. Third, jurors are capable of performing their duty to make determinations of credibility and evaluate the trustworthiness of the evidence before them.

If, for example, hearsay is admitted into evidence and the declarant is unavailable for cross-examination, the defendant may cross-examine the witness introducing the hearsay evidence and otherwise bring the hearsay nature of the evidence to the jury's attention. The jury can then perform its function as the trier of fact in filtering out the believable from the unbelievable.

5. The three exceptions contained in the Death Penalty Statutes are virtually identical to Fed. R.Evid. 403, which provides that:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Criminal defendants attacked Rule 414 contending that it violated due process. In addressing this constitutional attack, the Ninth Circuit first noted that "[t]he Constitution does not encompass all traditional legal rules and customs." *LeMay,* 260 F.3d at 1024. "The introduction of . . . evidence can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value." *Id.* at 1026. The Ninth Circuit further noted that "[a]s long as the protections of Rule 403 remain in place to ensure that potentially devastating evidence of little probative value will not reach the jury, the right to a fair trial remains adequately safeguarded." *Id.* at 1026. All other courts to entertain the issue of the constitutionality of Rule 414 have similarly concluded that the trial judges' discretion under Rule 403 saves Rule 414. *See Johnson v. Elk Lake Sch. Dist.,* 283 F.3d 138, 155 (3d Cir.2002) (noting that Rule 414 should be read together with Rule 403); *Mound,* 149 F.3d 799; *Castillo,* 140 F.3d at 883 ("Application of Rule 403 . . . should always result in the exclusion of evidence that has such a prejudicial effect [that it violates the due process right to a fair trial]."); *United States v. Enjady,* 134 F.3d 1427 (10th Cir.), *cert. denied,* 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998).

As previously noted, the standards for excluding otherwise relevant evidence in Rule 403 are, for all intents and purposes, the same ones Congress retained in the Death Penalty Statutes. Thus, by analogy, the provisions in the Death Penalty Statutes similarly should result in the exclusion of evidence that would violate the accused's right to a fair trial. The standards contained in 21 U.S.C. § 848(j) and 18 U.S.C. § 3593(c) are sufficient to enable the trial courts to exclude evidence at the sentencing phase that would run afoul of the constitutional right to a fair trial, including evidence that might deprive a defendant of his right to confrontation or cross-examination.

### B. Whether the Death Penalty Statutes Violate the Grand Jury Clause of the Fifth Amendment

Defendants also argue that the Death Penalty Statutes violate the Fifth Amendment's Indictment Clause. Defendants contend that the Death Penalty Statutes do not expressly provide for the indictment of the aggravating factors, it is impermissible for the prosecution to fashion a remedy for this *"Ring* problem"[6] by submitting the aggravating factors to the grand jury for consideration, any such special notice does not provide Defendants with adequate notice that they are charged with capital crimes, and the special notice procedure improperly relieves the grand jury of making the difficult decision of whether the death penalty is justified.

■■■■ These argument are not new to the courts and have been uniformly rejected. All elements of a criminal offense, including the statutory aggravating factors applicable to a capital offense, must be alleged in the indictment. *See Almendarez–Torres v. United States,* 523 U.S. 224, 228, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); *Quinones,* 313 F.3d at 53 n. 1. That the Death Penalty Statutes do not expressly state that the aggravating factors are elements of the offense to be charged by the Grand Jury does not mean that they run afoul of the constitution. *See United States v. McAllister,* 272 F.3d 228, 233 (4th Cir.2001); *Lentz,* 225 F.Supp.2d at 680–81; *United States v. Church,* 218 F.Supp.2d 813 (W.D.Va.2002). There is nothing in

---

**6.** The "Ring problem" is a reference to the anticipated impact of the Supreme Court's decision in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

the Death Penalty Statutes or elsewhere that precludes the government from alleging the aggravating factors in the indictment. *See Lentz*, 225 F.Supp.2d at 680–81; *Church*, 218 F.Supp.2d at 815 ("No statute or rule of procedure restricts the ability of the grand jury to make the findings that it did in this case."). In light of *Ring*, when the government intends to seek the death penalty, the grand jury arguably is *required* to consider the statutory aggravating factors that constitute the functional equivalents of elements of the offense. *See Quinones*, 313 F.3d at 53 n.1. Contrary to Defendants' assertion, having the grand jury make the special findings will further its role in ensuring there is probable cause to believe a capital crime has been committed and protect their constitutional rights. *See United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). Moreover, this procedure does not improperly transfer the decision whether to seek the death penalty to the grand jury. The prosecution is still responsible for determining what charges to place before the grand jury for consideration.

■ Defendants' contention that the special findings do not provide them with adequate notice that they are being charged with a capital offense is quickly dispelled by the fact that the Indictment expressly references 21 U.S.C. § 848(e) in Count 2, which is entitled "Death penalty," it further cites the Death Penalty Statutes within the special findings, and it alleges facts supporting the elements of the capital offenses with which they are charged. *See United States v. Pirro*, 212 F.3d 86, 92–93 (2d Cir.2000). This is adequate notice.

Lastly, Defendants' argument that the grand jury is improperly relieved of the determination that the death penalty is justified is similarly unavailing. Defen-

dants point to no authority for this proposition and the Court has found none. Grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination. The role of the grand jury simply " 'is to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary.' " *United States v. Suleiman*, 208 F.3d 32, 39 (2d Cir.2000) (quoting *United States v. Mancuso*, 485 F.2d 275, 281 n. 17 (2d Cir.1973)); *see also White v. Frank*, 855 F.2d 956, 961 (2d Cir.1988).

## C. Whether the Death Penalty Statutes Violate the Fifth and Eighth Amendments

Defendants further argue that, in accordance with the holding in *United States v. Quinones*, 205 F.Supp.2d 256 (S.D.N.Y. 2002), the death penalty statutes are facially invalid because there is an unacceptably high risk of executing an innocent person. The Second Circuit recently reversed *Quinones*, rejecting the precise arguments raised by Defendants and upholding the facial constitutionality of the Death Penalty Statutes. *Quinones*, 313 F.3d 49.

## D. Dismissal of the Aggravating Factors

Defendants also seek dismissal of the statutory and nonstatutory aggravating factors alleged in the Indictment.

### 1. 21 U.S.C. § 848(n)(7); 18 U.S.C. § 3592(c)(8)

■ Defendants first argue that, under the rule of lenity, the aggravating factor set forth at 21 U.S.C. § 848(n)(7) and 18

U.S.C. § 3592(c)(9) [7] must be interpreted only to apply to murder for hire or murder to gain an inheritance or life insurance proceeds. This Court previously rejected the identical argument in *United States v. Walker*, 910 F.Supp. 837, 848–49 (N.D.N.Y. 1995), and sees no reason to depart from the reasoning in that case. *See also United States v. Wicklund*, 114 F.3d 151, 153–54 (10th Cir.1997); *United States v. Cuff*, 38 F.Supp.2d 282, 288 (S.D.N.Y.1999); *United States v. Spivey*, 958 F.Supp. 1523, 1530 (D.N.M.1997); *United States v. Nguyen*, 928 F.Supp. 1525, 1535–36 (D.Kan. 1996).

### 2. 21 U.S.C. § 848(n)(8); 18 U.S.C. § 3592(c)(9)

■ Defendants next argue that the term "substantial" as used in the aggravating factor found at 21 U.S.C. § 848(n)(8) and 18 U.S.C. § 3592(c)(9) is too vague. This aggravating factor provides that "[t]he defendant committed the offense after substantial planning and premeditation." Although the boundaries of what is "substantial" is not subject to mathematical precision, it is not unconstitutionally vague. "Substantial" is defined to mean "of ample or considerable amount, quantity, size, etc." Random House Dict. of the English Language at 1418 (1979). As used in section 848(n)(8) and 3592(c)(9), the term modifies the degree of planning and premeditation required for the act to constitute an aggravating factor substantiating the imposition of the death penalty. Thus, to fall within section 848(n)(8) or 3592(c)(9), a jury must find a considerable amount of planning and premeditation as opposed to little planning and premeditation. All courts to have considered the use of the term substantial have concluded that it conveys a sufficiently definite

"meaning . . . to enable the jury to make an objective assessment." *United States v. Flores*, 63 F.3d 1342, 1373 (5th Cir.) (and cases cited therein), *reh'g denied*, 77 F.3d 481 (1995), *cert. denied*, 519 U.S. 825, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996); *see also United States v. Tipton*, 90 F.3d 861, 895–96 (4th Cir.1996), *cert. denied*, 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997); *United States v. McCullah*, 76 F.3d 1087, 1110–1111 (10th Cir.), *reh'g denied*, 87 F.3d 1136 (1996), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *Walker*, 910 F.Supp. at 849 (and cases cited therein).

### 3. 21 U.S.C. § 848(n)(12); 18 U.S.C. § 3592(c)(6)

■ Defendants next challenge the aggravating factor found at 21 U.S.C. § 848(n)(12) and 18 U.S.C. § 3592(c)(6) on the ground that the phrase "especially heinous, cruel, or depraved manner" is unconstitutionally vague. It has been held that

> The language "especially heinous, cruel, and depraved" without a limiting instruction would be unconstitutionally vague. *See Maynard v. Cartwright*, 486 U.S. 356, 364, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *King v. Puckett*, 1 F.3d 280, 284 (5th Cir.1993). Any vagueness in the language, however, is cured by the limitation in the statute that the offense involve torture or serious physical abuse. *See Walton v. Arizona*, 497 U.S. 639, 654–55, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (citing *Maynard v. Cartwright*, 486 U.S. at 364–65, 108 S.Ct. 1853).

*Jones*, 132 F.3d at 249–50.

*See also United States v. Bernard*, 299 F.3d 467, 481 (5th Cir.2002), *reh'g denied*, 51 Fed.Appx. 931 (5th Cir.2002); *United*

---

**7.** These provisions read as follows: "The defendant committed the offense as consider- ation for the receipt, or in the expectation of the receipt, of anything of pecuniary value."

*States v. Chanthadara,* 230 F.3d 1237, 1262 (10th Cir.2000), *cert. denied,* 534 U.S. 992, 122 S.Ct. 457, 151 L.Ed.2d 376 (2001); *United States v. Hall,* 152 F.3d 381, 414– 15 (5th Cir.1998), *reh'g denied,* 161 F.3d 10 (5th Cir.1998), *cert. denied,* 526 U.S. 1117, 119 S.Ct. 1767, 143 L.Ed.2d 797 (1999), *abrogated on other grounds, U.S. v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000); *United States v. Minerd,* 176 F.Supp.2d 424, 438–39 (W.D.Pa.2001) (and cases cited therein); *United States v. Frank,* 8 F.Supp.2d at 277–78. Circuit courts have also held that any vagueness concerns can be remedied through proper jury instructions. *See Jones,* 132 F.3d at 249–50. This Court adopts the reasoning of these other courts.

### 4. Non–Statutory Aggravating Factors Alleging Unadjudicated Criminal Conduct

■ Defendants next argue that unadjudicated criminal conduct should not be permitted to form the basis of an aggravating factor. Defendants maintain that there is a danger of prejudice if the jury rejects evidence of other criminal conduct during the guilt phase, but relies on that same evidence in evaluating the aggravating factors during the penalty phase. More specifically, Defendants are concerned that "a jury which had rejected the ... [unadjudicated criminal conduct] in the guilt phase would be faced with the anomalous task of reviewing the same fact pattern unencumbered by the Federal Rules of Evidence as a basis to execute the defendant." Tucker's Mem. of Law at 16.

For reasons similar to those previously discussed with respect to the constitutionality of the "relaxed evidentiary standard" applicable to the penalty phase of a capital case, this argument must fail. The use of unadjudicated criminal conduct at the penalty phase is not unconstitutional, particularly in light of the procedural safeguards contained in the Death Penalty Statutes. *See Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) (although not specifically addressing the issue, the Supreme Court upheld the use of unadjudicated criminal behavior at the penalty phase); *see also Hawkins v. Mullin,* 291 F.3d 658, 677–78 (10th Cir.2002); *United States v. Lee,* 274 F.3d 485, 494 (8th Cir.2001) ("Although determining whether there is a threat of unfair prejudice is a fact specific inquiry ... the admission of evidence of unadjudicated prior offenses at a capital sentencing hearing is constitutionally permissible and not inherently prejudicial.") (citing *Williams v. People of New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Hall,* 152 F.3d 381, 404 (5th Cir.1998); *Eaton v. Angelone,* 139 F.3d 990, 998 (4th Cir.), *cert. denied,* 524 U.S. 934, 118 S.Ct. 2338, 141 L.Ed.2d 709 (1998); *Hatch v. State of Oklahoma,* 58 F.3d 1447, 1465 (10th Cir.1995), *cert. denied,* 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996), *cert. denied,* —— U.S. ——, 123 S.Ct. 513, 154 L.Ed.2d 394 (2002)); *Devier v. Zant,* 3 F.3d 1445, 1464–65 (11th Cir.1993), *cert. denied,* 513 U.S. 1161, 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995); *Coleman v. Risley,* 839 F.2d 434, 459 (9th Cir.1988) ("We have long held that the due process clause does not preclude the sentencing judge from considering evidence of prior criminal conduct not resulting in a conviction."), *opinion withdrawn on other grounds sub nom. Coleman v. McCormick,* 874 F.2d 1280 (9th Cir.) (en banc), *cert. denied,* 493 U.S. 944, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989); *Williams v. Lynaugh,* 814 F.2d 205, 208 (5th Cir.) ("[T]he admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments."), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *Walker,* 910 F.Supp. at 852–854.

Under the Death Penalty Statutes, a unanimous jury must find an aggravating factor to be present beyond a reasonable doubt. Thus, Tucker is afforded the constitutional protection of this high evidentiary burden. *See Miranda v. California,* 486 U.S. 1038, 108 S.Ct. 2026, 100 L.Ed.2d 613 (Marshall and Brennan dissenting) (noting the potential problem of admitting unadjudicated criminal conduct where the trial court refused to instruct the jury "that it could consider the evidence of the unrelated murder in making a sentencing determination only if it found beyond a reasonable doubt that petitioner had committed the offense."). Second, while it is conceivable that certain evidence may be admitted at the penalty phase that would not be admissible during the guilt phase, all evidence admitted at the penalty phase must satisfy the constitutional minimum requirements of fairness. *See Lee,* 274 F.3d at 494. Evidence that does not meet the constitutional threshold of a fair trial will be excluded in accordance with the dictates of 21 U.S.C. § 848(j) and 18 U.S.C. § 3593(c) and the Fifth and Sixth Amendments. Third, the suggestion that a jury that has found a defendant guilty in the guilt phase of a trial cannot be impartial with respect to the evaluation of unadjudicated criminal conduct during the penalty phase makes little sense. By this same reasoning, a jury that convicted a defendant on count one of an indictment would be too biased to consider whether that same defendant also is guilty of the remaining count or counts in the indictment. Yet, we know from experience that jurors are capable of deciding each count on its own merits.

### E. Bill of Particulars and Other Requests for Relief

Defendants' remaining requests for relief will be addressed at the Court's January 13, 2003 motion calendar.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to declare the Death Penalty Statutes unconstitutional are DENIED.

**IT IS SO ORDERED.**